UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALBERT LOPEZ VICTORY,

                       Plaintiff,

v.                                                **DECISION AND ORDER**
                                                      02-CV-31S

THOMAS P. GRANT,
*Special Assistant to the Chair of the Board of Parole*,
TERRANCE X. TRACY,
*Chief Counsel to the Chair of the Board of Parole*, and
KENNETH E. GRABER,
*Commissioner of the Board of Parole*,

                       Defendants.

## I.  INTRODUCTION

In this civil rights action brought under 42 U.S.C. § 1983, Plaintiff Albert Lopez Victory, a former inmate of the New York Department of Corrections and Community Supervision ("DOCCS"), alleges that remaining Defendants Thomas P. Grant, Terrance X. Tracy, and Kenneth E. Graber violated and conspired to violate his right to due process in connection with the rescission of his grant of parole. Pending before this Court is Grant and Tracy's Motion for Summary Judgment, which is grounded in the doctrines of absolute and qualified immunity. (Docket No. 278.) Also pending is Victory's Motion to Set a Trial Date. (Docket No. 277.) For the following reasons, Grant and Tracy's motion is denied, and Victory's motion is granted.

## II.  BACKGROUND

Now in its fifteenth year, this litigation has a long and complex history. The facts have been exhaustively reported in various decisions, the most pertinent of which are

1

this Court's decision resolving the defendants' summary judgment motion, see Victory v. Pataki, No. 02-CV-0031, 2013 WL 4539296 (W.D.N.Y. Aug. 27, 2013), and the Second Circuit's opinions affirming that decision in part, reversing it in part, and remanding for further proceedings, see Victory v. Pataki, 814 F.3d 47 (2d Cir. 2016) and Victory v. Pataki, 632 Fed.Appx 41 (2d Cir. 2016) (summary order). This Court presumes familiarity with these decisions. For present purposes, the facts can be summarized as follows:

In 1970, Victory was convicted of felony murder stemming from the 1968 slaying of a police officer outside of a New York City discotheque. See People v. Bornholdt, 33 N.Y.2d 75, 350 N.Y.S.2d 369, 305 N.E.2d 461 (1973); Victory v. Bombard, 570 F.2d 66, 67 (2d Cir. 1978). He was sentenced to a term of 25 years-to-life in prison and committed to DOCCS's custody. But in 1978, Victory escaped his handlers while away from the correctional facility for dental treatment. He remained at large for three years until he was apprehended in California and returned to DOCCS's custody. Victory was thereafter a model prisoner.

On January 11, 1999, a two-member panel of the New York Board of Parole considered Victory for parole. Graber and Lawrence Scott were the Commissioners assigned to the panel. They advised Victory that they had reviewed his entire file, which included favorable recommendations from eight correctional officers and numerous references to Victory's 1978 escape. There were no letters opposing parole and no letters from the judge or prosecutors involved in the case. Following the hearing, during which no mention was made of the escape, Graber and Scott granted Victory parole.

What happened next forms the basis of this case. The grant of parole was not well received by the governor's office and high ranking officials at the Board of Parole, because it was inconsistent with New York Governor George Pataki's stance that violent felons should not be granted parole. The Second Circuit's opinion contains a complete recitation of the undisputed evidence concerning what occurred after the grant of parole. See Victory, 814 F.3d at 54-58. That full discussion is incorporated herein.

Essentially what occurred is that Grant, who was Special Assistant to the Chair of the Board of Parole, learned of the panel's favorable decision and notified Tracy, who was counsel to the New York Division of Parole. Grant subsequently notified other state officials, including those tied to the governor's office. He also sent Victory's parole hearing file to non-party Katherine Lapp, the governor's Director of Criminal Justice.

Lapp met with Grant and Tracy on January 13, 1999, to discuss whether proper procedures had been followed during the parole hearing, specifically noting that the transcript of the hearing did not contain references to Victory's 1978 escape. Without yet talking to Graber, the three then allegedly contrived a false narrative whereby Graber would claim ignorance of Victory's escape and that ignorance would be used to rescind the grant of parole. Later that day, Lapp also solicited a letter in opposition to the grant of parole from the prosecutor in Victory's case. The prosecutor soon after submitted a letter discussing Victory's escape and strongly opposing Victory's parole.

Telephone records confirm that no one spoke to Graber until January 14, 1999, the day after Lapp, Grant, and Tracy met and identified Graber's lack of knowledge as grounds for rescission, which suggests that Lapp, Grant, and Tracy concocted their plan

without actually knowing whether Graber knew of Victory's escape. Graber, Grant, and Tracy, along with others, then allegedly followed this course to initiate and conduct rescission proceedings supported primarily by Graber's alleged ignorance of Victory's escape.

On March 9, 1999, a three-member panel of the Board of Parole, which included Graber, conducted a parole rescission hearing, at which the prosecutor's letter and Graber's lack of knowledge of the escape were discussed. The only evidence offered concerning Graber's lack of knowledge of the escape was Graber's own unsworn statement that the original panel did not know about the escape at the time it granted parole. After the hearing, the panel unanimously voted to rescind Victory's parole, citing both the prosecutor's letter and Graber's lack of knowledge of the escape as "new materials" not available to the original panel.

On November 8, 1999, the Board of Parole Appeals Unit reversed the second panel's rescission determination, finding that the panel's reliance on Graber's unsworn statement violated Victory's due process rights. The Appeals Unit also determined that information concerning the escape was not new information, since the original record contained numerous references to it. Consequently, the Appeals Unit remanded the matter for a new rescission hearing before a new panel of commissioners who lacked any prior involvement in Victory's case.

After further state court and administrative proceedings that are not at issue here, Victory was eventually released to parole supervision on October 18, 2005.

## III. DISCUSSION

Having been whittled by various decisions by both this Court and the Second Circuit, this case now involves Victory's allegations that Grant, Tracy, and Graber violated and conspired to violate his right to due process by depriving him of a neutral decision-maker at his parole rescission hearing and fabricating a false basis for rescinding his parole. The Second Circuit has determined that, if proven, these allegations "would suffice to establish a violation of [Victory's] right not to be deprived of liberty without due process." Victory, 814 F.3d at 62-63.

As to whether Graber violated Victory's right to a neutral decision-maker at his parole rescission hearing, the Second Circuit has held that he did: "[I]t was impossible for Victory to dispute the facts purported to justify rescission of his grant of parole without impeaching the credibility of the commissioner heading his rescission panel. This procedural infirmity therefore deprived Victory both of his right to an impartial decision-maker and to a decision based on some evidence." Id. at 63-64.

As to whether Graber directly deprived Victory of a liberty interest without due process on the basis of fabricated evidence, the Second Circuit held that Graber is protected by absolute immunity "for any actions taken while performing the quasi-judicial function of deciding whether to rescind Victory's parole." Id. at 65. This is a limited holding, because the court went on to find that the doctrine of absolute immunity does not extend "to the alleged fabrication of evidence when performed outside that adjudicatory role, before the initiation of rescission proceedings." Id. at 66. The Second Circuit also found that Graber is not protected by absolute immunity to the extent that he

5

enlisted himself in "a scheme to deprive a person of liberty by rescinding his parole based on grounds known to be fabricated." Id. at 66.

As to whether Grant and Tracy conspired to violate Victory's due process rights, the Second Circuit found sufficient evidence from which "a reasonable juror could conclude that there was an agreement among Lapp, Tracy, and Grant, who together prematurely set in motion rescission procedures with this allegedly false pretext [Graber's lack of knowledge of the escape] in mind." Id. at 68. In particular, the Second Circuit cited evidence from which a reasonable juror could find that conversations between Lapp, Tracy, and Grant pertaining to Graber's lack of knowledge of the escape as a grounds for rescission occurred *before* Graber's own purported realization that he had overlooked the escape and *after* Lapp had already solicited letters in opposition to parole emphasizing the escape. See id. The court therefore found that Tracy and Grant were not entitled to summary judgment on Victory's conspiracy claim. See id.

What invited the present motion is the Second Circuit's further finding that Tracy and Grant may be entitled to absolute or qualified immunity for their involvement in the rescission process. See id. at 69 ("We do not preclude the possibility that there may be some further impediment to Victory's recovery against some of the named Defendants. On remand, the district court may address whether any individual other than Graber was entitled to absolute or qualified immunity."). Those issues are discussed below.

A. **Summary Judgment Standard**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

6

law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995). In this regard, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co.

7

v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

**B.     Absolute Immunity**

Absolute immunity may shield state officials from liability for "judicial acts" and "acts that are prosecutorial in nature." Scotto v. Almenas, 143 F.3d 105, 110 (2d Cir. 1998). But in § 1983 actions, "the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Id. As such, "[a]bsolute immunity is proper only in those rare circumstances where the official is able to demonstrate that the application of absolute immunity to the circumstances presented is required by public policy." Id. (citing Cleavinger v. Saxner, 474 U.S. 193, 201, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985)). "A parole official who claims the benefit of absolute immunity bears the burden of showing that public policy requires that it be invoked." Krebs v. New York State Div. of Parole, No. 9:08-CV-255 (NAM/DEP), 2009 WL 2567779, at *6 (N.D.N.Y. Aug. 17, 2009).

In the Second Circuit, courts take a "functional approach" to determine whether an official should receive absolute or qualified immunity. Id. Under this approach, the type of immunity "flows not from rank or title or location within the Government, but from the nature of the official's responsibilities." Cleavinger, 474 U.S. at 201. Consequently, "a factual inquiry may be necessary to determine whether a state official's acts were judicial or prosecutorial in nature, entitling her to absolute immunity; or administrative or

investigative in nature, entitling her to only qualified immunity." Jackson v. Ramirez, 1:15-CV-617-GHW, 2016 WL 796854, at *4 (S.D.N.Y. Feb. 22, 2016) (citing Stewart v. Lattanzi, 832 F.2d 12, 13 (2d Cir. 1987) (per curiam)). "[T]he more distant a function is from the judicial process, the less likely absolute immunity will attach." Scotto, 143 F.3d at 111 (quoting Snell v. Tunnell, 920 F.2d 673, 687 (10th Cir. 1990)).

Parole officials, like judges, "are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole." Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999). "Parole officers also receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." Scotto, 143 F.3d at 111-13. But "absolute immunity does not extend to parole officials and employees when they perform functions outside these narrowly delineated roles, such as "scheduling or making a recommendation." Victory, 814 F.3d at 66 (quoting King v. Simpson, 189 F.3d 284, 288 (2d Cir. 1999)).

Although Grant and Tracy deny that they played any role in Victory's rescission hearing, they assert entitlement to absolute immunity on the basis that Victory has alleged their involvement in the rescission proceedings. They argue that any conduct they are alleged to have engaged in following the initial panel's grant of parole is akin to the conduct a prosecutor would engage in before initiating a criminal matter, and therefore they are entitled to absolute immunity. See Spear v. West Hartford, 954 F.2d 63, 66 (2d Cir. 1992) ("The decision to initiate administrative proceedings against an

9

individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.")

Here, however, the Second Circuit has found conflicting evidence concerning who initiated the rescission hearing: "According to Tracy's deposition testimony, [Board of Parole Chairman Brion] Travis first proposed the rescission hearing. Tracy and Grant then met with [Deputy Chief of Operations of the Division of Parole Mike] Hayden, who testified that he made the decision to convene the rescission hearing." Victory, 814 F.3d at 56. It also found that "a reasonable juror could conclude that there was agreement among Lapp, Tracy, and Grant, who together prematurely set in motion rescission procedures with this allegedly false pretext in mind." Victory, 814 F.3d at 68. The "false pretext" refers to Lapp, Tracy, and Grant concocting the allegedly false narrative that Graber lacked knowledge of Victory's escape before Graber himself purportedly realized that he overlooked that fact. Victory, 814 F.3d at 68. The allegations and evidence thus go well beyond the notion that Tracy and Grant were simply involved in scheduling the rescission hearing, as Defendants contend.

For these reasons, Defendants' reliance on Krebs is misplaced. In Krebs, the plaintiff asserted a procedural due process claim after his parole was rescinded based on a victim-impact statement received by the parole board after issuance of its release decision. See Krebs, 2009 WL 2567779, at *2-*3. Krebs was granted parole in December 2005. His parole was later rescinded in January 2006 after the parole board received a victim-impact statement from the victim's family, who claimed not to have received notice that Krebs was being considered for parole until after parole was

granted.  Krebs later discovered that parole officials met with the family members and allowed them to submit statements to be considered in the parole rescission proceedings.  The court found that the parole officials were entitled to absolute immunity as to Krebs's allegations that they "convened a meeting with the victim's family and allowed 'improper statements and comments' to be recorded into the transcripts." Id. at *6.

Without passing on whether the basis of the Krebs decision is sound or consistent with absolute immunity principles,[1] this Court finds Krebs distinguishable.  First, there is no indication in Krebs that parole officials affirmatively solicited grounds for rescission from the victim's family.  Rather, members of the victim's family sought to make statements in the rescission proceedings, which the parole officials permitted.  Second, nowhere in Krebs is there an allegation that parole officials acted falsely or with intent to fraudulently rescind Krebs's parole.  The information provided by the family members appears to be alleged as "improper statements and comments" only because it was untimely, not because it was fraudulent or false.  Third, the alleged conduct in Krebs occurred during a legitimate review of the grant of parole prompted by the victim's family's unsolicited communication.  Here, however, the allegations are that the investigation was illegitimate and prompted internally by parole officials, perhaps for political or public perception reasons.  Krebs simply does not involve similar allegations

---

[1] The court in Krebs found that the parole officials' actions in meeting with the victim's family members and allowing them to make statements in connection with the rescission proceedings related "solely to their participation in the parole release *decision*, and thus also [fell] comfortably within the protection afforded by absolute immunity." Krebs, 2009 WL 2567779, at *6 (emphasis added).  This conclusion is undermined, however, by the fact that none of the three parole officials played any role in the actual adjudication of Kreb's parole rescission, which was decided by three different parole commissioners. Id. at *3.  The factual underpinning of the court's application of absolute immunity thus appears uncertain.

11

as are in play here: that state officials hatched a plan to rely on false pretenses to rescind a grant of parole. Krebs is therefore not instructive.

In this Court's view, Tracy's and Grant's actions were not sufficiently akin to those of a prosecutor, nor has either of them demonstrated that absolute immunity is required as a matter of public policy. First, neither Grant nor Tracy are responsible for or authorized under New York law to initiate rescission hearings nor do their job responsibilities make them the functional equivalent of individuals authorized to initiate such proceedings.[2] See 9 N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.5 (b); Cleavinger, 474 U.S. at 201 (noting that the type of immunity flows from the nature of the official's responsibilities); cf. Scotto, 142 F.3d at 112 (finding recommendation to initiate parole revocation proceedings by parole officer who lacked discretionary authority to initiate such proceedings himself was investigative, not prosecutorial). Second, Tracy's and Grant's alleged conduct was removed from the "judicial function" of rescinding parole in that they allegedly decided that Victory's parole should be revoked and then manufactured a false basis to achieve that end before rescission proceedings were contemplated. See Victory, 814 F.3d at 66 ("absolute immunity does not extend to the alleged fabrication of evidence when performed outside that adjudicatory role, before the initiation of rescission proceedings). Finally, neither Grant nor Tracy directly adjudicated or were involved in the actual adjudication of the rescission proceedings.

---

[2] Grant's job duties as Special Assistant to the Chair of the Board of Parole related to public and government relations. (Declaration of Thomas P. Grant, Docket No. 228-5, ¶ 1.) Tracy's job duties as Counsel to the New York State Division of Parole related to "overall management of Counsel's office, providing legal advice to employees and officials of the Division of Parole regarding their official duties and responsibilities, providing input on proposed rules and regulations, overseeing the administrative appeals process, and assisting in the drafting of legislation." (Declaration of Terrance X. Tracy, Docket No. 228-8, ¶¶ 1, 4.) These are not adjudicatory or prosecutorial job responsibilities.

Consequently, this Court finds that Grant and Tracy are not entitled to absolute immunity.[3]

**C.    Qualified Immunity**

"Qualified immunity protects public officials from civil liability 'if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" Coggins v. Buonora, 776 F.3d 108, 114 (2d Cir. 2015) (quoting Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996)); White v. Pauly, __ U.S. __, 137 S. Ct. 548, 551, 196 L Ed. 2d 463 (2017) (per curiam) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, __ U.S. __, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) (quoting Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)). Clearly established law should not be defined "at a high level of generality." White, 137 S. Ct. at 552. Although the caselaw "does not require a case directly on point for a right

---

[3]This conclusion is consistent with the Second Circuit's application of absolute immunity to Graber. The court found that "Graber's absolute immunity does not extend to the alleged fabrication of evidence when performed outside that adjudicatory role, before the initiation of rescission proceedings. . . Nor does it protect alleged wrongdoers who, while not performing the function of an adjudicator or an advocate, enlist themselves in a scheme to deprive a person of liberty by rescinding his parole based on grounds known to be fabricated." Victory, 814 F.3d at 66.

13

to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 551 (alteration omitted) (internal quotation marks omitted).

Defendants argue that they are entitled to qualified immunity because it was not clearly established in 1999 that a New York inmate with a release date had a liberty interest sufficient to trigger due process protection at a rescission hearing. But such is not the case. Both state and federal caselaw existing in 1999, as well as the state parole rescission statutes, sufficiently held that New York inmates possessed a liberty interest in their parole release. See Rizo v. N.Y. State Bd. of Parole, 251 A.D.2d 997, 998, 674 N.Y.S.2d 180 (4th Dep't 1998) (recognizing that "petitioner possessed a liberty interest in his parole release after respondent's original [grant of parole]"); Ortiz v. N.Y. State Bd. of Parole, 239 A.D.2d 52, 57, 668 N.Y.S.2d 823 (4th Dep't 1998) (holding that the petitioner "possessed a liberty interest in his parole release"); Green v. McCall, 822 F.3d 84, 88-89, 291 (2d Cir. 1987) (cited in Ortiz); Drayton v. McCall, 584 F.2d 1208, 1219-20 (2d Cir. 1978); 9 N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.5.

Defendants next argue that they are entitled to qualified immunity because their conduct was objectively reasonable. But numerous issues of material fact exist concerning Defendants' conduct. For example, the Second Circuit has found that Victory has proffered "sufficient evidence to raise a triable dispute as to whether he was knowingly deprived of liberty on the basis of fabricated evidence." Victory, 814 F.3d at 64. This includes a finding that sufficient evidence exists from which "a reasonable juror could conclude that there was an agreement among Lapp, Tracy, and Grant, who

14

together prematurely set in motion rescission procedures with this allegedly false pretext in mind." Id. at 68. And the Second Circuit has found that if Victory proves these and his other allegations, he will establish a violation of his right not to be deprived of liberty without due process." Id. at 63. Consequently, issues of fact preclude a finding that Defendants' conduct was objectively reasonable.

Accordingly, for the reasons stated above, this Court finds that Grant and Tracy are not entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Defendants Grant and Tracy are not entitled to summary judgment on the grounds of absolute or qualified immunity. Consequently, their Motion for Summary Judgment will be denied, and Victory's Motion to Set a Trial Date will be granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 278) is DENIED.

FURTHER, that Plaintiff's Motion to Set a Trial Date (Docket No. 277) is GRANTED.

FURTHER, that counsel shall appear before this Court for a status conference on May 31, 2017at 10:00 a.m to discuss the scheduling of a trial date.

SO ORDERED.

Dated: April 24, 2017
      Buffalo, New York

                                  /s/William M. Skretny
                                  WILLIAM M. SKRETNY
                                  United States District Judge